UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PRECIOUS BANKHOLE,
          Petitioner

v.                                3:02-CV-702 (EBB)

IMMIGRATION & NATURALIZATION
SERVICE ET AL.,
          Respondents

FILED
DEC 5  11 25 AM '03
U.S. DISTRICT COURT
NEW HAVEN, CONN.

## RULING ON REMAND OF PETITION FOR HABEAS CORPUS

### INTRODUCTION

Petitioner Precious Bankhole, ("Petitioner" or "Bankhole"), is a native and citizen of Nigeria. She was admitted to the United States in 1972 as the spouse of a non-immigrant student and her status was adjusted to that of lawful permanent resident in 1984. On June 6, 1997, Petitioner was convicted in the United States District Court for the Eastern District of Virginia of: (1) conspiracy to commit money laundering; (2) perjury; and (3) obstruction of justice. She was sentenced to 63 months in prison. Her conviction was affirmed by the Court of Appeals for the Fourth Circuit.

As a result of these convictions, Respondent instituted removal proceedings against Petitioner. She conceded her removability and sought asylum, cancellation of removal under the Immigration and Nationality Act ("INA"), § 240(A), family hardship relief pursuant to INA § 212(h), withholding of removal under INA § 241(B)(3), and withholding of removal under the

Convention Against Torture ("CAT"), 1465U.N.T.S. 85, G.A. Res.39/46, 39th Sess.,U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/39/51 (1984),23 I.L.M. 1027 (1984). Because Bankhole had been convicted of an aggravated felony and sentenced to more than five years' imprisonment, the immigration judge ("IJ") ruled that she was ineligible for any of these forms of relief except witholding under CAT. After review, he denied her claim for asylum under that Convention. The BIA summarily affirmed.

Petitioner, *pro se*, filed a Section 2241 habeas petition with this Court, which denied the petition, holding, *inter alios*, that it had no jurisdiction to review a claim under CAT in that the torture convention was not "self-executing" and that, as an individual convicted of an aggravated felony, Petitioner was ineligible for family hardship relief pursuant to the Immigration and Nationality Act ("INA"), Section 212(h), 8 U.S.C. Section 1182(h). The Court assumes familiarity with that opinion.

Still *pro se*, Bankhole appealed this Court's decision on two grounds: that the Court had erred in not considering, and vindicating, her claim under CAT; and that, under the recent decision in Beharry v. Reno, 183 F.Supp.2d 584 (E.D.N.Y. 2002), she is entitled to a hearing, pursuant to INA Section 212(h), as to whether the order of deportation against her should be waived due to the "substantial hardship" her deportation would cause to her disabled citizen son.

Shortly after the entry of judgment by this Court, the Court

of Appeals for the Second Circuit decided Wang v. Ashcroft, 320 F.3d 130 (2d Cir. 2003), in which that Court held that the Foreign Affairs and Restructuring Act of 1988, which implements the relevant article of CAT, does not deprive the federal courts of habeas jurisdiction to review the BIA's denial of claims for witholding of removal pursuant to CAT. Resultingly, the Appellate Court remanded for consideration of the CAT arguments, based on intervening law.

As to Petitioner's claim of family hardship, the Appellate Court suggested that this Court consider:(1) whether Petitioner's failure to make an argument similar to that in Beharry v. Reno, 183 F.Supp. 584 (E.D.N.Y. 2002), during her administrative proceedings, amounts to a waiver of such an argument now; (2) whether Petitioner is entitled to a family hardship hearing, INA Section 212(h), under Beharry; (3) whether Beharry's "international law" gloss on Section 212(h) is correct; and (4) any other arguments the parties deem relevant to Petitioner's request for a Section 212(h) hearing. This Court ordered briefing from the parties on these four issues. The memoranda of law having been received from both parties, the petition is now ready for decision.[1]/

---

[1]/ At some point after she submitted her brief on appeal, Bankhole secured counsel, who filed a reply brief in the Court of Appeals and the present memorandum of law on her behalf.

3

**LEGAL ANALYSIS**

I. **CAT**

The issue before this Court, pursuant to an analysis of CAT, is whether Petitioner has met her burden of establishing that she is eligible for deferral of removal under the Convention by proving that it is more likely than not that she will be imprisoned and tortured upon her removal to Nigeria. See 8 C.F.R. §§ 208.16(c)(4), 202.18(a)(2002); Matter of S-V-, 22 I&N Dec. 1306 (BIA 2000). In making this determination, all evidence relevant to the possibility of future torture shall be considered, including, but not limited to, evidence of past torture, evidence that Petitioner could relocate to a part of the country where she is not likely to be tortured, evidence of gross, flagrant, or mass violations of human rights within the country of removal, and any other relevant information regarding conditions in the country of removal. See 8 C.F.R. § 208.16(c)(3). Torture is defined, in pertinent part, as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her, or a third party, information or a confession, punishing him or her for an act he or she or a third party has committed or is suspected of having committed, or intimidating or coercing him, her, or a third person, for any reason based on discrimination of any kind when such pain or suffering is inflicted by, or at the instigation of, or with the

4

consent or acquiescence of a public official or other person acting in an official capacity... Torture is an extreme form of cruel and unusual and inhuman treatment. It does not include lesser forms of cruel, inhuman, or degrading treatment or punishment that do not amount to torture. . . In order to constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering. An act which results in unanticipated or unintended severity of pain and suffering is not torture." *See* 8 C.R.F. §§ 208.18(a)(1); 208.18(a)(2); 208(a)(5).

Bankhole has stated that, if she is returned to Nigeria, she will be tortured and imprisoned, pursuant to the 1990 Decree No. 33 of the Nigerian Drug Enforcement Agency. This Decree provides that a Nigerian citizen who is convicted of a narcotic drug offense in a foreign country, or is detected carrying a narcotic drug into a foreign country after a journey originating from Nigeria "shall be liable to imprisonment for a term of five years without an option of fine and [her] assets and properties shall be liable to forfeiture as provided by this Decree." *See generally* McDaniel v. United States INS, 142 F.Supp.2d 219, 223 (D.Conn. 2001).

Initially, this Court must respectfully disagree with the finding of the IJ that "[t]here is no evidence that, while conditions in the Nigerian prison system are very poor for anyone who is detained in that system, there would be intentional

5

infliction of harm by the authorities." Oral Decision of Immigration Judge, November 28, 2001 at 11-12. The Nigerian Report on Human Rights Practices, issued by the U.S. Department of State on February 23, 2001, provides, in pertinent part:

> Prison and detention conditions remained harsh and life threatening.. . Lack of potable water, inadequate sewage facilities, and severe overcrowding resulted in unhealthy and dangerous sanitary conditions. Disease was pervasive . . . inmates had to provide their own food [and] only those with money or whose relatives brought food regularly had sufficient food . . . [m]any inmates were forc[ed] to sleep on concrete floors, often without a blanket... prison officials, police, and security forces often denied inmates food and and medical treatment
> as a form of punishment or to extort money from them. Harsh conditions and denial of proper medical treatment contributed to the deaths in detention of numerous prisoners. A reputable human rights organization estimated. . . **that at least one inmate died per day** in the Kiri Kiri prison in Lagos alone. According to the same nongovernmental organization, dead inmates promptly are buried in mass graves on the prison compounds, usually without their families having been notified. Although the Constitution of Nigeria prohibits torture and mistreatment of prisoners, police and security forces regularly beat detainees and convicted prisoners.

As noted above, torture is an extreme form of cruel and unusual and inhumane treatment. Further, in order to constitute torture, an act must be specifically intended to inflict severe physical or mental pain or suffering. Surely, when officials involved with a prison system intentionally withhold required medical treatment for punishment or extortion, this is an act "specifically intended to inflict severe physical and or mental

6

pain and suffering." When at least one inmate dies per day in a prison, in part due to the witholding of proper medical treatment, it must be inferred that an extreme form of cruel and unusual and inhumane treatment is occurring therein. This Court does not accept the rationale that simply because "Nigeria is a very poor country. . . it may not have the resources to maintain an adequate prison system." Oral Decision of Immigration Judge, November 28, 2001 at 11. "Adequate" is the complete antithesis of the extreme form of cruel, unusual or inhumane treatment described above.

The difficulty with Petitioner's claim that she would be subjected to this type of horrific treatment is that she was not convicted of a drug offense within the meaning of Decree No. 33. Rather, she was convicted of conspiracy to commit money laundering, 18 U.S.C. § 1956(h); perjury, 18 U.S.C. § 1623; and obstruction of justice, 18 U.S.C. § 1503. Her son was charged in the same Indictment with various violations of the money laundering statutes, see Indictment 1996 Term at Alexandria, Criminal No. 96-00479-A, at Counts 1, 2, 3, 4, and 5. Although various paragraphs in the Indictment refer to Bankhole's son's trafficking in crack cocaine, **he was not indicted on any drug related offense** and she most assuredly was not. See Indictment at Counts 1; 6; and 7. Petitioner's claim under CAT, therefore, must fail, as it is beyond peradventure that she is not a "Nigerian citizen who [has been] convicted of a **narcotic drug offense** in a

foreign country." Decree No. 33 (1990)(emphasis added). Hence, it is unreasonable to believe that Petitioner will be imprisoned upon her return to Nigeria, let alone tortured therein.[2]

## II. Claims Pursuant to Beharry v. Reno, 183 F.Supp.2d 584 (E.D.N.Y.2002)(Weinstein,J.)

### A. Whether Petitioner Failed to Exhaust Her Administrative Remedies

Initially, the INS contends that Petitioner waived her right to make a Beharry-type international law claim by failing to raise the issue before the administrative agency. The Court of Appeals rejected the claim that Petitioner had waived her Beharry-type argument, as it was not presented to this Court. "We think this inappropriate, as the petitioner was pro se and as such cannot fairly be expected to have had a nimble familiarity with the most recent, relevant case law." Bankhole v. INS, et al., Doc. No. 02-2587, slip op. at 5 (2d Cir. June 5, 2003).

This Court now holds that she did not waive her Beharry-type argument before the INS, as the initial removal proceedings, at which the IJ found her deportable, were held on November 28, 2001, and Beharry was not decided until January 22, 2002. It would be unjust to hold Petitioner's counsel, who appeared on her behalf before the IJ, accountable for failing to make the extraordinary arguments as to complex international law upon which Beharry was decided three months later. Further,

---

[2] There exists some evidence that Bankhole's husband left her property in Nigeria when he died. Thus, her removal should not prevent her taking her disabled son with her.

8

Petitioner did make a claim pursuant to the identical section of the INA presently under consideration, Section 212(h) of the INA, 8 U.S.C. § 1182(h). "[Petitioner] applied for relief in the form of . . . a sec. 212(h) waiver." Oral Decision of Immigration Judge, dated November 28, 2001 at 2. The Court agrees with Bankhole that she need not have made the exact same type of argument before the administrative agency as she is presently making before this Court. See Elliot Coal Min. Co., Inc. v. Director, Office of Workers' Compensation Programs, 17 F.3d 616 (3rd Cir. 1994)(though statutory construction argument not raised by Director in administrative proceedings, it was nevertheless open to consideration by Court of Appeals as alternative theory on which decision of administrative agency could be affirmed).

### B. Application of Beharry to the Present Case

Section 212(h) of the INA allows discretionary relief from deportation for aliens who have established seven years of residence in the United States and who have a family member who would suffer "extreme hardship" if the alien is removed. However, Section 212(h) does not apply to a lawful permanent resident who has been convicted of an "aggravated felony." See 8 U.S.C. 1101 (43)(denominating specific crimes as aggravated felonies).

In Beharry, the court looked to the International Covenant on Civil and Political Rights [3]/, the Convention of Rights of the

---

[3]/ S. Treaty Doc. 95-2 (1978), 999 U.N.T.S. 171.

Child [4], and the Universal Declaration of Human Rights [5] to hold that customary international law requires the INS to hold "compassionate" hearings prior to deporting certain lawful permanent residents who have resided in the United States for seven years and where removal would cause extreme hardship to family members - - namely, **those aliens who have been convicted of an "aggravated felony" as defined after they committed their crime, but which was not so characterized when they committed the crime.** Beharry, 183 F.Supp.2d at 585-87, 603-605.

In the present case, Petitioner was convicted on **June 6, 1997** for, *inter alios*, conspiracy to commit money laundering in violation of 18 U.S.C. Section 1956(h). She was sentenced to 63 months in prison. However, as early as **January 3, 1989**, Section 1101(43) included, as an aggravated felony, "any offense described in section 1956 of Title 18 (relating to the laundering of monetary instruments.") 8 U.S.C. § 1101(43)(1988 Ed, Supp. II). **In 1990**, Section 1101(43) provided, in pertinent part, that aggravated felonies included "any offense described in section 1956 of Title 18 (relating to laundering of monetary instruments). . . for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least 5

---

[4] U.N. Doc. A/44/736 (1989), reprinted in 28 L.L.M. 1457 (1989).

[5] G.A. Res. 217A (III), U.N. GAOR, 3rd Sess., Supp. No. 1, U.N. Doc. A/810 (1948).

years, or any attempt or conspiracy to commit any such act . . . ." 8 U.S.C. § 1101(43)(1990). Accordingly, Petitioner was convicted in 1997 of a crime denominated as an "aggravated felony" in excess of eight years **prior** to her conviction. [6]/ Accordingly, she fails to bring herself within the ambit of Beharry; thus, it is unnecessary for this Court to explore the many esoteric issues of international law raised in that case and opine whether Judge Weinstein was right or wrong.

Inasmuch as the Beharry exception is inapplicable in this case, the Court turns to the present status of Petitioner's statutory rights under the INA. In April, 1996, Congress amended INA Section 212(h) to preclude any waiver of deportation for a lawful permanent resident, who, after lawful admittance, committed any of the now vastly extended list of offenses, continuing to include conspiracy to commit money laundering, and adding obstruction of justice and perjury:

> No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony.

See Fn.6.

---

[6]/ On April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") was enacted. AEDPA amended 8 U.S.C. § 1101(43)(1990) by adding obstruction of justice and perjury to the list of aggravated felonies. See 8 U.S.C. § 1101(43) (a)(S)(1996). Accordingly, Petitioner was also convicted of two additional aggravated felonies, and sentenced to serve 63 months on each count, to run concurrently. See Judgment in a Criminal Case, Doc. No. 1:96-CR-00479-002 (June 6, 1997, E.D., Va.) at p.2. For this reason, too, then, she is subject to removal.

11

Id., as amended by § 348(a) of the Illegal Immigration and Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), 8 U.S.C.§ 1229 et. seq.(September 30,1996). It has been held that IIRIRA's new definition of "conviction" is referring to Fed.R.Crim.P. 32(d)(1)'s definition of "judgment of conviction". Perez v. Elwood, 294 F.3d 552, 562 (3rd Cir. 2002). Therefore, for purposes of the INA, a conviction occurs when, *inter alios*, a "formal judgment of guilt of the alien [is] entered by the Court." 3 U.S.C. § 1101(a)(48)(A); Fed.R.Crim P. 32(d)(1). As noted above, Petitioner entered this Country in 1972 and became a lawful permanent resident in 1984. She was convicted within the meaning of IIRIRA on June 6, 1997, when the Virginia district court filed its Judgment in a Criminal Case. This means that Petitioner was convicted after April 1, 1997, the effective date of IIRIRA, 8 U.S.C. § 1229(b), the section that repealed the right to an INA discretionary hearing on waiver of removal for aliens in the position of Bankhole. Thus, for this reason, also, Petitioner's request for a compassionate hearing must be denied.

## CONCLUSION

Inasmuch as Petitioner has not been convicted of a drug-related offense under Nigerian law, there is no evidence to support her claim that she will be imprisoned and tortured upon removal to Nigeria under CAT. Additionally, she is not entitled to a Beharry-type compassionate hearing as, in contradistinction to Beharry, Bankhole's crime of conspiracy to launder money was

12

categorized as an aggravated felony **at the time she committed the crime**. Cf. Beharry, 183 F.Supp. 2d at 605.

For these reasons, this Court holds that Bankhole's Petition for Writ of Habeas Corpus and for a compassionate hearing under the analysis of Beharry must be DENIED.

                                            ELLEN BREE BURNS
                                            SENIOR UNITED STATES DISTRICT JUDGE

Dated at New Haven, Connecticut this 5th day of December, 2003.